MALMSTROM v. SECOND EAST APARTMENT CO. et al.

No. 4536.   Decided June 13, 1929.   (278 P. 811.)

*Ricy H. Jones* and *E. A. Walton,* both of Salt Lake City, for appellant.

*Irvine, Skeen & Thurman,* of Salt Lake City, for respondent.

WOOLEY, District Judge.

In this case the plaintiff brought an action to recover possession of certain real estate and personal property, consisting of the Second East Apartments, in Salt Lake City, and the furniture therein, against the Second East Apartment Company, a corporation, and Mary Fargeson. The complaint prayed for the appointment of a receiver to collect the rents and preserve the property pending the action.

After a trial before the court without jury, the court made findings of fact and conclusions of law, and entered judgment in favor of the plaintiff against both defendants, by default as to the corporation, restoring him to the possession of the property. Mary Fargeson alone appeals.

The plaintiff, who is the owner of the property, on March 24, 1923, entered into a contract to sell it to the Second East Apartment Company for a total consideration of $35,000, to be paid in installments, the purchaser to have possession under the conditions stated in the contract. Mary Fargeson was in possession when the action was commenced, claiming that this contract had been assigned by the Second East Apartment Company to her husband, Joseph Fargeson, and that Joseph Fargeson had assigned it to her.

The plaintiff's theory of the case is that the assignment of the contract from the Second East Apartment Company to Joseph Fargeson was never completed; that it was made upon condition that the latter should pay the Second East Apartment Company therefor the sum of $3,000, which he failed to pay, and that the assignment was never actually delivered to him, and so on that ground she had no right to the possession; but that, whatever the facts may be in that respect, the Second East Apartment Company and Mary Fargeson, and Joseph Fargeson, before he assigned to her, breached the contract by their failure to pay the installments when they fell due, and by their failure to pay certain taxes and insurance premiums provided for in the contract, and by permitting the property to fall into disrepair; and hence they forfeited their right to the possession.

The trial court found and held with the plaintiff on both propositions.

The appellant claims that the complaint does not state facts sufficient to constitute a cause of action; and counsel in the briefs set out thirteen particulars wherein they claim is is insufficient. In the complaint it is alleged that the Second East Apartment Company is a corporation; that

the plaintiff is the owner, and entitled to the immediate possession of certain real estate and personal property, which is described with particularity; that the real estate is improved with an apartment house, containing upwards of thirteen apartments, and the personal property is in use therein; that in March, 1923, the plaintiff entered into a contract to sell the same to said corporation for a total consideration of $35,000; that thereafter the interest of the said corporation therein was assigned and transferred conditionally, by an instrument in writing, to Mary Fargeson; that the defendant corporation and Mary Fargeson have defaulted in the payments to be made upon the contract, and that, by the terms of the contract, they have forfeited their interest in and to the property, but refuse to give up or surrender said property, and are collecting the rents therefrom, and refuse to apply the same to the payment of the installments due on the contract, and refuse to keep up the property, and have permitted the plumbing and other parts of the property to fall into disrepair, and have failed to pay the plumbing bills and other bills incurred in attempting to make repairs on the property, and have permitted mechanics' liens to be filed against the property; that, in order to protect the property, it is necessary that the repairs be kept up, and that all of the apartments be kept in a rentable condition and rented; that, by reason of the attitude of the defendants toward the property, and their failure and refusal to keep up the property, and by their commission of waste thereon, and their failure and refusal to collect the rents and pay over the same, the real estate and personal property are in danger of being lost or materially damaged; that, while the plaintiff, under his contract, is entitled to possession of the property and the whole thereof, the defendants have refused to surrender possession, and are now resisting the efforts of the plaintiff to obtain possession thereof; and that it is absolutely necessary, for the protection of the property, that a receiver be appointed to take immediate possession of the property

and the whole thereof, to properly care for and protect the same, and to collect the rents therefrom until the respective rights of the parties can be determined.

The pleading cannot be said to be a model. It is open to criticism for uncertainty and indefiniteness with respect to some of its averments; and it states mere general conclusions in some instances where it would have been better if the specific facts had been alleged. Such objections, however, were not made in the trial court with a view to having the complaint amended; they were made there, as they are raised here, only in support of the claim that the complaint is so wholly lacking in allegations of essential facts as not to state a cause of action. But, since the plaintiff does allege that he is the owner, and entitled to the immediate possession, of the property, which is described, and he does allege facts from which it must be inferred that the defendants are in possession thereof, and that they refuse to surrender the possession to the plaintiff, we think it is sufficient to state a cause of action in ejectment. *Jones* v. *Mommott,* 7 Utah 340, 26 P. 925.

It is urged in behalf of appellant that the evidence does not support some of the findings, and that certain of the findings are not within the issue raised by the pleadings. The case was tried upon the complaint of the plaintiff and the answer filed by Mary Fargeson. In her answer she specifically admits the allegations of the complaint to the effect that the real property is improved with an apartment house; that the personal property is in use therein; that the Second East Apartment Company, during the month of March, 1923, entered into a contract to purchase the same from the plaintiff for a consideration of $35,000; that thereafter the interest of the said defendant corporation was, by an instrument of assignment, transferred conditionally to defendant Mary Fargeson; denies all other allegations of the complaint; and affirmatively alleges:

"7. Further answering plaintiff's complaint, this defendant alleges that she is the beneficial owner of the property described in

paragraph 2 of plaintiff's complaint, and this defendant admits that the plaintiff is the owner and holder of a vendor's lien reserved in the contract of sale on said property; and this defendant alleges that a dispute has arisen between the plaintiff and the defendant as to the amount due and owing under said contract, and that this defendant claims that she has not been credited with all of the payments that have been made on said contract; and this defendant now offers to pay all sums found due and owing under said contract upon determination of the amount so found due and owing."

The trial court found: (1) That the Second East Apartment Company is a corporation; (2) that the plaintiff is the owner, and entitled to the immediate possession, of the following described real estate, to wit: [Here follows a description by metes and bounds], located in Salt Lake county, state of Utah, and the personal property described in plaintiff's complaint; (3) that the real estate is improved, etc., as alleged in the complaint; (4) that the Second East Apartment Company entered into a contract to purchase the same, etc., as alleged; and then made the following special findings:

"5. That the defendant, Mary Fargeson, claims by assignment from the defendant, Second East Apartment Company, an interest in the said contract of sale made between the plaintiff, Nels J. Malmstrom and the Second East Apartment Company; that the defendants have defaulted in the performance of the said contract, in that they have failed to pay instalments covering principal, interest and taxes specified in the said contract to be paid, to the amount of $986.34, at the time this action was filed, and had further defaulted in that they had permitted the plumbing to fall into disrepair, and plumber's bills to be incurred and a mechanic's lien to be filed therefor in the amount of $238.00, and had further defaulted, in that the said defendants had moved, or caused to be moved from said premises, personal property included in the said contract to the value of $750.00, and that the defendant, Second East Apartment Company, had left the said property, leaving Mary Fargeson in charge and responsible for the said property, and that the said Mary Fargeson had no money or means or ability to comply with said contract or carry out its provisions and to make up the said defaults, and is not now financially able to make the payments in arrears on the said contract, and make up the defaults, and otherwise resume the said contract in accordance

with its terms, or to keep up and properly protect and conserve the said property.

"6. That in order to define and determine the amount of certain defaults and for no other purpose, the defendant, Mary Fargeson and Joseph Fargeson executed a note for $536.34, payable to the plaintiff, and deposited therewith as collateral an assignment of all of the claims and interest of the defendant Mary Fargeson in and to the said contract of sale of the said property between the plaintiff and the Second East Apartment Company, a corporation, and signed certain post-dated checks, which were taken and received by the plaintiff with the understanding that no rights would be waived thereby, and that the said note and checks should not be considered as a payment until and as payments were actually made thereon, at which time credit would be given on the said contract accordingly.

"7. That the defendant Mary Fargeson defaulted and failed to pay the payments specified in said note to be paid, and on such default, the plaintiff sold, in accordance with the terms and provisions of the said note, the collateral deposited therewith for the sum of $50.00, which was endorsed upon the said note, and which sum the court finds to be the reasonable value of the said collateral."

The claim that the foregoing findings are not supported by the evidence cannot be sustained. A reading of the evidence preserved in the bill of exceptions discloses testimony and documentary evidence tending to support every material finding made by the trial court.

That the plaintiff was the owner, that is, the legal owner, of the real property involved in this action, is not and cannot be questioned in this record. The only claim which the appellant has in either the real estate or the furniture is based upon the contract between Malmstrom and the Second East Apartment Company, the effect of which, upon the questions of ownership and right to possession, will be considered presently.

That Mary Fargeson was in possession and claiming the right to possession under that contract is asserted by herself.

That the defendants had defaulted in the performance of the contract, in that they had failed to pay installments

covering principal, interest and taxes to the amount of $986.34, at the time the action was commenced, is supported by the testimony of the witness C. H. Carlquist, who was called by the plaintiff. As counsel in the briefs attack this particular finding with much force and vigor, it may be well to point out the items, as shown by Carlquist's testimony, which go to make up this sum of $986.34. He testified that they are as follows: The sum of $125 semi-annual installment due January 1, 1925, which appellant admits is payable under the terms of the contract; the sum of $150 due to the tax fund for January, February, and March, 1925, at the rate of $50 per month, which appellant claims is not called for under the contract, but admittedly was not paid—whether it was due or not will depend upon our interpretation of the contract—the sum of $52 due for fire insurance premium paid by Malmstrom in 1924, which, under the contract, should have been paid by the purchaser; the sum of $200.81 for taxes paid by Malstrom in 1924, which amount the purchaser should have paid, but which Carlquist testified he had failed to pay; the sum of $8.55 interest on installments which had not been paid on time. These sums make a total of $536.36. This item, according to Carlquist's testimony, was agreed upon by Malmstrom and Joseph Fargeson at a conference had between them the latter part of March or fore part of April, 1925, at which the witness was present, and was represented by a note executed by the Fargesons at that time in the sum of $536.34, being the note mentioned in the sixth finding of facts. In addition to the five items above mentioned, Carlquist testified that the $200 installment, admittedly due under the contract of January 1, 1925, had not been paid; that there had been no payment of two items of $50 each for the months of April and May, 1925, which were called for according to the plaintiff's construction of the contract; and that the $200 installment, admittedly called for by the terms of the contract on May 1, 1925, had not been paid. The total of the foregoing items, including the first

five in the note, is $1,036.34, against which the plaintiff allowed a credit of $50 upon the so-called sale of collateral, mentioned in finding No. 7, leaving the balance of $986.34, as found by the court.

As to the plumbing bill and the mechanic's lien therefor, the evidence shows that Joseph Fargeson incurred the bill; it had not been paid; and the contractor filed a mechanic's lien, as found by the court. So much is admitted by appellant. But she says that the lien is void upon the face of the record, because it was not filed within the time required by the laws of this state, and in this she is correct. The court, however, did not find or hold the appellant is indebted to plaintiff in the amount of the lien, and no judgment was demanded or rendered on account thereof. So there was no prejudicial error in the court finding, as it did find, the facts with respect to this matter, even though the lien was void.

The correctness of the finding that the plaintiff is entitled to the immediate possession of the real property involved, which is the gist of this action, depends upon a determination of the rights of the parties under the sales contract, if it be held or assumed that Mary Fargeson stands in the shoes of the Second East Apartment Company with respect to that contract. Upon that assumption, but not so holding, we proceed to look at the contract. It was executed on March 24, 1923, between Nels J. Malmstrom, the party of the first part, and the Second East Apartment Company, party of the second part. In it the party of the first part agrees to sell and convey to the party of the second part, and the party of the second part agrees to buy, the property for a total consideration of $35,000. It recites that the sum of $8,606.91 of the purchase price has been paid, and provides that the balance shall be paid as follows: $200 on May 1, 1923, and a like sum on the first day of each and every month thereafter until the full amount of the purchase price is paid, together

with interest as therein stipulated. In addition to the monthly installments, the buyer agrees to pay $125 on July 1, 1924, and a like sum on January 1 and July 1 each year year thereafter; and it is stipulated that the full amount of the purchase price shall be paid by January 1, 1933. The seller agrees to make a warranty deed in favor of the buyery and to place the same in escrow to be delivered when the contract is completed. The buyer agrees to pay the premiums of the fire insurance, to keep the property in repair, and to pay the taxes. With respect to the taxes, the contract provides:

"In addition to the monthly installments which the buyers agree to pay to be applied on the payment of interest and principal, the said buyers further agree to pay the sum of $50.00 on May 1st, 1923, and a like sum on the first day of each and every month thereafter until Nov. 1, 1923, when the balance of the sum necessary to pay the general taxes for the said year 1923 shall be paid by the buyers to the said sellers and the said sellers agree to apply the said amount consisting of the $50.00 installment payments and the remaining balance necessary to make up the full amount of the taxes for the year 1923 to the payment of said taxes. *A like procedure shall be followed annually thereafter, the payments to be made on the monthly basis each succeeding year during the life of this contract for the purpose of creating a fund out of which is paid the general taxes.* The said sellers agree to allow the buyers a credit of 2% per annum on the average balance in said Tax Paying Fund."

It is further stipulated that the seller shall convey to the buyer the personal property when the sum of $12,000 shall have been paid on the contract.

The seller agrees to deliver the premises together with the personal property to the buyer on or before April, 1923, and the contract contains the following paragraph relative to possession and forfeitures:

"Said buyer is entitled to the possession of said premises April, 1923, and may so continue unless forfeited by the non-payment of the purchase money or any installments thereof or interest or any other payments as herein stipulated, or by default in the performance of any of the other terms, conditions and agreements herein contained. On failure of said buyer, his heirs, administrators, executors, suc-

cessors, or assigns to make any of the payments of said principal or interest, taxes or assessments or insurance premiums or charges when due, time being of the essence of this contract, or on failure to comply with this agreement in any other respect all payments made under this contract may, at the option of the seller, become forfeited to the seller and be retained and settled as liquidated damages; the parties hereto agreeing that it impossible to estimate the actual damages and thereupon the seller shall be released from all obligation in law and equity to convey said property and the buyer shall forfeit all right thereto and shall immediately deliver up possession of said land, together with all improvements and additions made thereon, and all of the aforesaid personal property, and the property including said additions and improvements shall remain with the land and become the property of the sellers, the buyer becoming at once a mere tenant at will of said sellers."

As to the tax fund set up in the paragraph relative to that matter above quoted, we think that the meaning of the contract is, and that the intention of the parties to it was, that commencing with the first of the year 1924 the buyer should pay in $50 on the first of each month until November 1, when he should pay such additional sum as might be necessary, when added to the payments so made, plus the interest to be allowed, to pay the taxes for the year. This seems to be the practical interpretation which Malmstrom and Joseph Fargeson themselves placed upon the contract, for Carlquist testified that they included the three tax items for January, February, and March in the note above mentioned; and it seems to us to be consistent with the general plan of the contract to spread the payments over the year instead of having them all come due in the fall when the taxes must be paid. Given this meaning to the contract, the appellant's claim that nothing was due to the tax fund for the months above mentioned cannot be sustained.

The contract with which we are concerned conveys no title to the purchaser. It does not purport to do so. It is a mere contract to convey when the purchase price is paid and the other conditions imposed upon him are performed

by the purchaser. The purchaser, under the express provisions of the contract, is entitled to the possession of the premises so long as he continues to make the payments as therein stipulated; but we think the obvious meaning of the first sentence of the paragraph above quoted, relative to possession, is that the right to possession ceases when the purchaser defaults in any of the payments provided for in the contract, unless any such payments be waived by the seller. The court, having found from the evidence that the defendants had defaulted in their payments to the extent of $986.34 at the time the action was commenced, and there being no waiver of such payments, as will shortly appear, rightly concluded and found that the plaintiff was entitled to the immediate possession of the premises.

That the plaintiff was the owner of the property; that Mary Fargeson was in possession thereof, claiming by assignment to her of the contract of sale between the plaintiff and the Second East Apartment Company, that the defendants defaulted, in that they failed to pay the installments due under the contract as stated, and that the plaintiff is entitled to the immediate possession of the property, are the material findings upon which the judgment is predicated. All find support in the evidence, as do the other findings, some of which may be regarded as more or less immaterial.

The point that some of the findings, particularly those contained in No. 6 and No. 7, are not within the issues raised by the pleadings, is well taken. A comparison of the allegations of the complaint which are denied in the answer will not disclose any reference to those matters, except very remotely in the allegations relative to defaults. They were in issue, however, in the evidence during the trial, and that is probably the reason why they were incorporated in the findings. It does not necessarily follow that the case must be reversed because

these findings are outside the issues raised by the pleadings. The judgment does not rest upon them. The judgment is well supported by sufficient findings, even if these be entirely disregarded. Therefore they are immaterial, and the making of them, though outside the issues, was harmless error.

It is claimed that the plaintiff waived whatever rights he had under the forfeiture provisions of the contract by accepting the note above mentioned for some of the installments and other items, by accepting post-dated checks for some of the payments at the conference had in March or April when the note was given, and by accepting payments throughout the period of Joseph Fargeson's possession after they were due. The defense of waiver was not set up in the pleadings in the case, and we might brush the question aside on that ground. But we prefer to dispose of it on the merits. The evidence upon the point, considered as a whole, does not support the claim. In the first place, as to the note, the Fargesons failed to make the very first payment provided for therein. While the acceptance of the note extended the time for payment of the items which it includes, it should not be held to constitute a waiver in case the Fargesons failed to pay the note. A seller does not waive his right to rescind the contract, or, as in this case, to recover possession of the property, by granting to the purchaser an extension of time in which to make payment, if the purchaser refuses to pay when the time fixed by the new agreement has elapsed. 29 Cyc. 1393; *Machold* v. *Farnan*, 14 Idaho 258, 94 P. 170; *Boulder & B. Placer Co.* v. *Maxwell et al.*, 24 Colo. 87, 48 P. 815. Furthermore, Carlquist's testimony shows, in effect, that it was understood between Malmstrom and Fargeson, when the note was given, that the payments to be made on the note were to be credited on the contract when and not until they were actually made; that is, the note itself was not to be regarded as payment. As to the checks, some of them were returned by the bank on which

they were drawn, because the makers had not sufficient funds to their credit to pay them when presented. And to all of the delinquencies and as to what the appellant claims was the established custom of accepting payments after they became due, it was shown by the evidence that Carlquist, acting for Malmstrom, told Mrs. Fargeson on more than one occasion before the action was commenced that, if the delinquencies were not made up, Malmstrom would take action to repossess the property. While it is true, as this court held in *Kohler* v. *Lundberg,* 54 Utah 399, 180 P. 590, that the right of forfeiture once waived by the vendor cannot be recalled or insisted on without notice to the vendee, still that proposition does not help the appellant, because the evidence here shows that Malmstrom advised the Fargesons to make up the delinquencies or he would declare a forfeiture. The impression made upon the mind of this writer by a reading of the entire record many times is that Malmstrom showed a commendable spirit of forbearance toward the Fargesons all through his dealings with them; but that he nevertheless intended at all times to maintain all his rights under the contract. It would certainly not be just for us now to say to him that, because he had been lenient toward his debtors, he had thereby lost his right to the possession of his own property to one who failed or refused to make the payments stipulated in the contract.

The appellant claims that the judgment cannot stand because the plaintiff is not entitled to the remedy which he seeks in this action. There is no merit to this claim. All that he seeks in this action is the possession of the property, and that is all that the judgment awards him. Time is made the essence of the contract by the express agreement of the parties; and the parties themselves have stipulated in their contract that the purchaser shall be entitled to the possession only so long as he continues to make the payments promptly as provided for therein. The purchaser forfeited his right to the possession

of the property when he defaulted in the payments which the court found he had failed to make, and the right to the possession was at once restored to the owner of the property under the plain and unambiguous terms of the contract. An action in the nature of ejectment to recover the possession is an appropriate remedy to the seller in such a situation.

Thirty-nine errors are assigned in this case, and all are argued in the briefs. Most of them relate to the points which we have noticed above; all of them have been considered in the light of the record, which has been carefully examined. We have discussed those points which seemed to us to merit discussion. The appellant had a fair trial and ample time and opportunity to present any reason whatever that she might have why she should not surrender possession of the apartment house to the plaintiff. It even appears that, after the case had been tried and the judgment entered, the plaintiff offered to permit her to continue in the possession of the property under the contract, if she would pay the sums that were in arrears. This she failed to do. So that, if she was in fact in default as the court found she was, and as the evidence in this case clearly shows that she was, then it is but just and equitable, as well as lawful, that she be required to surrender the possession of the property to the plaintiff.

There is no reversible error in the record. The judgment is affirmed, at appellant's cost.

CHERRY, C. J., and STRAUP, ELIAS J. HANSEN, and FOLLAND, JJ., concur.

EPHRAIM HANSON, J., being disqualified, did not participate herein.