HUFFINE, RESPONDENT, *v.* LINCOLN ET AL., APPELLANTS.

(No. 6,585.)

(Submitted March 17, 1930. Decided April 16, 1930.)

[287 Pac. 629.]

*Messrs. Belden & DeKalb,* for Appellants, submitted a brief; *Mr. H. Leonard DeKalb* argued the cause orally.

272

Mr. *Wellington D. Rankin* and Mr. *Oscar O'Mueller,* for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The defendants George Lincoln and his wife have appealed from a judgment in favor of the plaintiff, Leonie Huffine, canceling a certain contract for the sale of real estate by plaintiff to defendants and directing the immediate surrender of the real estate to plaintiff.

The complaint alleges that plaintiff is the absolute owner of the real property described and sets up the contract entered into on May 15, 1925, which, by its terms, required defendants to pay annual interest at the rate of eight per cent on the full purchase price of $19,500, in advance, on the fifteenth day of May in each year; to pay all taxes before they become delinquent and to keep the buildings on the premises insured in the name of plaintiff; the full purchase price was payable five years from date. Time was made the essence of the contract, and, on default by the defendants, plaintiff was authorized to terminate the contract by giving ten days' notice in writing so declaring. It alleges that defendants failed to pay the interest due under the contract on May 15, 1926, and May 15, 1927; failed to pay the taxes for the year 1925; and failed to keep the buildings insured as agreed, and are wholly in default. It is further alleged that plaintiff duly served notice in writing, on March 3 and 31, 1927, of defendants' default, and again, on August 17, 1927, duly served the required notice declaring the termination of the contract and demanding possession, but that defendants refused to comply with the requirements of the contract and of the notice.

By answer defendants admit the execution of the contract and that they went into possession of the premises thereunder on May 15, 1925; admit that the taxes for 1925 were not paid and that they did not insure the buildings; and admit the service upon them of the written notice of termination and demand for possession and their refusal to yield; but deny that they were in default under the contract, as alleged in the com-

plaint. The answer then sets up as a special defense that, on June 2, 1926, defendant George Lincoln was injured seriously and turned the management of the ranch over to plaintiff, who continued to operate it up to January 1, 1927, during all of which time said defendant was incapacitated; that plaintiff harvested crops and marketed them and, after paying the taxes for 1926 and expenses of the ranch, had in her hands a considerable surplus which was "as defendants are informed and believe" more than sufficient to liquidate and settle the claims of plaintiff, but that plaintiff had not rendered an accounting to defendants. It is further alleged that plaintiff was indebted to defendants in a large amount for pasturage of cattle and for hay fed to them. Defendants allege that they are ready and willing to pay whatever sums may be found due to plaintiff over and above the amount found due from plaintiff to them and pray for an accounting and for judgment.

By reply, plaintiff admits harvesting and selling crops for defendants and alleges that, on February 28, 1927, she made full accounting and paid over to defendants $1,090 "as full adjustment, settlement and accounting," and denies the allegation respecting the cattle.

The cause was tried to the court without a jury and, at the opening of the trial, plaintiff waived all claim of damages. On the evidence adduced the court found that defendants were in default in the payment of interest for 1926 and 1927 and taxes for 1925, 1927, and 1928; that plaintiff served notice "for cancellation of said contract unless the payments were made" on August 17, 1927, and defendants failed and neglected to make the payments; that all of the allegations of the complaint are true and "verified by the evidence," and the allegations of the answer are not true and constitute no defense; and that there was no evidence adduced to justify defendants in withholding the possession of the premises from plaintiff. The judgment followed, quieting title in plaintiff,

canceling and annulling the contract, and ordering the immediate surrender of the premises to plaintiff.

Defendants thereafter moved the court to amend the judgment by fixing and allowing a definite time within which they may relieve themselves from loss and forfeiture by the payment of all sums found due plaintiff. This motion was denied.

Counsel for defendants predicate error on (1) the court's refusal "to give consideration to the counterclaim; (2) on the finding that defendants were in default as to the interest due in 1928 and taxes for 1927, as not within the issues; (3) insufficiency of the evidence to justify the finding that the facts set forth in the answer are not true and not sufficient to constitute a defense; (4) in predicating the decision on the notice of August 17, 1927; (5) on the court's refusal to grant defendant relief from forfeiture of the contract"; (6) in refusing to amend the judgment as requested.

It is clear from the pleadings and the evidence adduced that interest in the sum of $1560, payable May 15, 1926, had not been paid and defendants were in default on account thereof, as well as for failure to insure the buildings in a reasonable amount, in favor of plaintiff, when defendant George Lincoln was injured on June 2, 1926. Time was expressly made the essence of the contract. When defendant was injured, he induced plaintiff to look after the ranch and the harvesting of the crops, he being then a widower, and having no one he could call upon for this service other than plaintiff, his sister. There existed a chattel mortgage on the crop to secure the payment of approximately $2,000 and defendant owed a grocery bill of more than $500, with many smaller bills. These amounts defendant requested plaintiff to pay out of the receipts from the sale of crops, which she did, and twice while defendant was in the hospital plaintiff, on request, turned over to defendant, or for his use, $500. With these drains on the receipts from the ranch, defendant realized that there would not be enough left to pay his past-due liability to the plaintiff and, on November 15, 1926, he author-

ized her to pay the 1926 taxes and, according to his testimony, to ''use the remainder as you see fit,'' and plaintiff then stated that she did not need the money.

Defendant testified: ''There was no payment made by me directly on this contract, except the first payment [made in advance on execution of the contract], except I offered this last money that was on the grain. There was no discussion or agreement between us when she took charge that it had anything to do with the original contract. It was a separate transaction.''

On February 28, 1927, plaintiff mailed to defendant a check for $1,090, with a letter stating that it was the balance left from the proceeds of the sale of the crop. This check defendant accepted and deposited to his credit in the bank; he neither then nor thereafter demanded an accounting.

Twice in the month of March plaintiff made written demand on defendant for payment of the past-due obligations and, receiving no response, on August 17, 1927, she caused a formal notice in writing to be served upon defendant to the effect that, unless he complied with the terms of his contract within ten days, the same should be ''determined and cancelled,'' and he should surrender possession of the premises. This notice was not complied with, and after the expiration of the ten days this action was commenced.

On demand of defendant, plaintiff rendered in court an accounting with respect to her stewardship in looking after his crops for him, and it was then agreed that her report of the balance on hand and turned over to defendant, was correct.

1. As to the asserted error in predicating the court's decision on the formal notice of August 17, 1927, it is true that the complaint alleged that ''on or about the 3d and 31st day of March, 1927, plaintiff duly served notice on the defendants of the respective defaults and demanded of them the possession of said premises,'' but the notices given were not before the court, and the only proof was that defendants were in default in payments due in 1926, and plaintiff ''demanded these payments in February, 1927, and in March,

1927," but received no response to her demands, and, as a result, gave the formal notice to pay within ten days or suffer cancellation of the contract on August 19, 1927. If, as stated by counsel for defendants, the notice of March 3, 1927, which they contend should control, declared the termination of the contract and demanded possession of the premises, was "an arbitrary notice that the contract was at an end" and in which "no permission was granted to repair the defaults," the notice was clearly ineffectual as contrary to the agreement of the parties expressed in the contract and a further notice was necessary, and the same is true as to the notice of March 31, 1927. The mere fact that a second or third notice was given, when no action was taken upon the initial notice, is no reason for depriving the vendor of the benefit of a proper notice. (*Lang* v. *Hedenberg*, 277 Ill. 368, 115 N. E. 566.) Under the circumstances, the court was justified in considering only the latter notice.

2. It is earnestly contended that plaintiff waived the provision of the contract making time the essence thereof. It is clear from the evidence that the most that can be said in this regard is that, on account of defendant's injury, plaintiff granted him indulgence for an indefinite time; but, whether because of the fact that he had married his nurse while still in the hospital and in default, or for reasons undisclosed, plaintiff terminated the indulgence by demand for payment of the balance due and, on receiving no response, served the alternative written demand, which was also ignored.

The following terse statement by Mr. Chief Justice Brantly disposes of this contention: "Though the vendor had extended indulgence to the vendee, he is not required to wait indefinitely for the vendee to perform his obligation. If the latter continues in default, the vendor, by demand for payment of the balance * * * and notice of his purpose to terminate the contract in case of further default, may put the vendee upon his guard. If after such notice he does not make payment within a reasonable time, the vendor may declare the contract at an end." (*Suburban Homes Co.* v. *North*, 50

Mont. 108, Ann. Cas. 1917C, 81, 145 Pac. 2, 5; see, also, *Estabrook* v. *Sonstelie,* 86 Mont. 435, 284 Pac. 147.)

3. While defendant George Lincoln admits that he made no demand for an accounting, he now asserts that, after default, a trust relation existed between him and plaintiff, citing 39 Cyc. 1612, and no demand for an accounting was necessary; that it was the duty of plaintiff to account to him and until such accounting was made, he was in no position to make a tender of the amount due under the contract.

We are of the opinion that when, on February 28, 1927, ■ plaintiff tendered to defendant the sum of $1,090, as the balance remaining of the receipts from the sale of his crops, under the "separate transaction" having nothing to do with the contracts, and after having discussed with him the necessary payments from the fund, many of which were directly authorized by the defendant, his receipt and retention of the amount, without question, constituted a settlement, and no further accounting was necessary.

Defendant had received all that he had coming from the sale of his crops and knew exactly what was due from him to plaintiff, unless, as he now contends, plaintiff was indebted to him for pasturage of cattle. Defendants claim that the trial court did not "consider" their counterclaims or set-offs; what the court did was to consider them, and on the showing made, find that the allegations thereof "are untrue." There is no evidence that defendants ever made a claim for pasturage until the answer was filed and the court was justified in disregarding the so-called "counterclaim" for pasturage, on the evidence, showing as it does, that plaintiff owned no cattle and such cattle as were shown to have been on the land belonged to her husband.

By defendant George Lincoln's own testimony it appears that, while Huffine cattle grazed upon the lands in question and fed from haystacks on the ground, they were but a part of a large number of cattle which entered upon lands not properly fenced and destroyed hay not properly protected.

Defendant himself made the broad statement, "Everybody's cattle were there, but Mr. and Mrs. Huffine's cattle were there too." "It would be impossible to say just how many head were in there and who they belonged to." Such testimony precluded damages against plaintiff for destruction of hay, even though the claim therefor could be made the basis of a "counterclaim" in such an action as this.

4. Counsel for defendants contend that "outstanding error of the court was in failing to provide for and safeguard the equitable rights of appellants" under their allegation that "they are ready and willing to pay whatever sums may be found due plaintiff over and above all sums which may be found due from plaintiff to defendants, or either of them, as herein set forth." They rely upon the provision of section 8658, Revised Codes 1921, that "whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, wilful, or fraudulent breach of duty."

We are of the opinion that this statute has no application to the case presented. Here the plaintiff was not seeking a judgment of forfeiture; she waived any claim to damages and sought but the cancellation of a contract, which had been theretofore terminated, after default and notice giving ample opportunity to repair the default, in the manner expressly agreed upon by the parties, and for possession of the premises. (*Oscarson* v. *Grain Growers Assn.*, 84 Mont. 521, 277 Pac. 14.) The action of the court in declaring the contract canceled and ordering surrender of possession of the premises was the same as that explained in *Harper* v. *Tidholm*, 155 Ill. 376, 40 N. E. 575, 577, wherein it is said: "In affording this relief, it, of course, became necessary for the court to determine whether the contract was still subsisting or not; and the effect of the decree was to find that it had been terminated, in accordance with its terms, by the acts of the parties themselves."

But even if the statute is applicable and, while it is true ▮▮ that forfeitures are not favored, contracts making time of the essence thereof and providing for their termination on default are not contrary to law or public policy, and courts will not undertake to make new contracts for the parties, but will enforce such provisions in a contract unless waived, or the party for whose benefit the provisions are inserted is estopped from asserting them, or performance has been prevented by circumstances sufficient to relieve the defaulting party from performance. (*Fratt* v. *Daniels-Jones Co.*, 47 Mont. 487, 133 Pac. 700.)

The defendant George Lincoln was put on his guard early in March, 1927, and even though, as contended, the notice then given was an "arbitrary notice that the contract was at an end," this defendant knew that, under the contract, he then had ten days in which to repair his default, yet he did nothing then, nor thereafter during the six months elapsing between that notice and the commencement of the action, although he was specifically notified twenty days before the action was commenced that unless he acted within ten days the contract would be terminated. Had he, as he now claims, been unable to make tender by reason of lack of knowledge as to the balance due, he could at least have made that claim to plaintiff, before his rights became forfeited, and sought an adjustment. As to this claim made for the first time in the answer filed, having heard his testimony and observed the witness on the stand, the trial court found that his claim "was untrue," and with this finding we cannot interfere.

The court's finding, coupled with defendants' failure to make timely attempt to protect their rights under the contract, establishes a "wilful breach" of the contract by either "inability or unwillingness to perform. (*Oscarson* v. *Grain Growers Assn.*, above.)

Nor does the showing make any great appeal to the con- ▮ science of the court. Here we have a party, in possession of a ranch for four years, with the possibility of raising $10,000 worth of grain in a year, who made no down payment

on the purchase price and whose payments, voluntary and otherwise, on interest and taxes amounted to little over $2,000. A renter would have paid much more under any of the usual farm leases. We see no cogent reasons for declaring the trial court in error for its failure to grant to the delinquent further time in which to repair his default and re-establish rights under the contract, by the very terms of which he had forfeited all right long prior to the commencement of the action, or why the court should exercise its equity power to that effect.

The cases cited by counsel for defendants on this phase of the case deal with fact conditions far different from those here shown.

The following excerpts from the recent case of *Malmstrom* v. *Second East Apartment Co.,* (Utah, 1929) 278 Pac. 811, 815, are pertinent here: "A seller does not waive his right to rescind the contract, or, as in this case, to recover possession of the property, by granting to the purchaser an extension of time in which to make payment, if the purchaser refuses to pay when the time fixed by the new agreement has elapsed. * * * While it is true * * * that the right of forfeiture once waived by the vendor cannot be recalled or insisted on without notice to the vendee, still that proposition does not help the appellant, because the evidence here shows that" the vendee was advised "to make up the delinquencies or he would declare a forfeiture. The impression made upon the mind of this writer * * * is that Malmstrom showed a commendable spirit of forbearance * * * all through his dealings * * * but that he nevertheless intended at all times to maintain all his rights under the contract. It would certainly not be just for us now to say to him that, because he had been lenient toward his debtors, he had thereby lost his right to the possession of his own property to one who failed or refused to make the payments stipulated in the contract."

5. It is true that the court's findings with respect to taxes for 1928 and interest due in May, 1927, are without the

issues in this case, but, as no money judgment was sought or recovered, and defendant George Lincoln was in default as to the matters alleged in the complaint, these immaterial findings cannot affect the validity of the judgment. (*Malmstrom* v. *Second East Apartment Co.*, above.)

For the reasons stated the judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.

Rehearing denied May 21, 1930.