## NORTHERN MINING CORPORATION v. COOKE MINING CO.

No. 9738.

Circuit Court of Appeals, Ninth Circuit.

Oct. 22, 1941.

R. Lewis Brown, of Butte, Mont., and Leon R. Jacobs, of Long Island City, N. Y., for appellant.

Vard Smith and Gibson & Smith, all of Livingston, Mont., R. F. Gaines, of Butte, Mont., and Gavin McNab, Schmulowitz, Aikins & Wyman, Nat Schmulowitz, Oliver B. Wyman, and Walter S. Rountree, all of San Francisco, Cal., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HANEY, Circuit Judge.

Appellee brought this action to quiet its title to certain mining properties, and ob-

tained a judgment therein, from which this appeal was taken.

On July 10, 1918, Montana Scotch Bonnet Copper and Gold Mining Company, a Washington corporation, hereafter called Scotch Bonnet, was the owner of certain mining properties, and executed an instrument, hereafter called a contract, by which it promised to convey such properties to one McKay upon payment to it of certain sums on specified dates. The contract, also signed by McKay, among other things, provided:

"Time is expressly made of essence of this instrument, and it is agreed that this instrument is intended as an option in favor of said purchaser, and said purchaser shall be required to carry out the terms and conditions hereof at his option only, but should said purchaser fail or neglect to comply fully and promptly with any of the terms and conditions of this instrument, then and in that event this instrument, at the option of said Company, may be forthwith and without notice declared terminated and at an end, to the same effect as if the same had never been executed, * * *".

In 1918, McKay transferred his rights under the contract to one Scott, and prior to 1920, Scott conveyed such interest to Glengarry Mining Company, a corporation, hereafter called Glengarry.

Scotch Bonnet and Glengarry modified the contract on December 4, 1923, October 17, 1925, September 13, 1927, March 1, 1930 and on October 9, 1934, as to amounts and times of payment. On March 12, 1936, to purchase the property Glengarry would have had to pay Scotch Bonnet a total of $32,857.71 principal and interest as specified in the contract. On that date Scotch Bonnet sold the properties and the contract to Cooke Mining Company, a corporation, hereafter called Cooke, for $12,-000. Cooke was caused to be organized by one Crone on April 9, 1936. Crone owned a controlling interest in Cooke and controlled it until his death on October 16, 1936. Crone was also a stockholder in Glengarry when Cooke obtained the properties and contract.

On May 1, 1936, the option having expired, Cooke notified Glengarry that it owed $32,857.71 and stated that "unless the same is paid or some satisfactory arrangement made for the payment thereof before the first day of July, 1936, that on that day the Cooke Mining Company will

commence proceedings to take over the property and eject the Glengarry Mining Company, therefrom". On July 8, 1936 Cooke notified Glengarry that it was proceeding to take over the property in accordance with the previous notice. There was no showing that Crone had interfered with the efforts of Glengarry to raise money to be used to take up its option.

On May 19, 1936, Crone filed an action against Glengarry in a state court, and recovered a judgment against it on June 23, 1936. Execution was issued, and on September 18, 1936, Crone purchased for $14,308.85, all the "right, title and interest" of Glengarry in the properties. On September 1, 1937, one Birkel, a stockholder in Glengarry, redeemed the property for $16,291.17, and on November 12, 1937, received a sheriff's deed covering all the properties. On March 31, 1938, Birkel conveyed all the "right, title and interest" of Glengarry in the properties to appellant.

Cooke brought this action in a state court on August 8, 1938, praying for a judgment cancelling the interests of Glengarry, Birkel and appellant, and quieting his title. The action was removed to the court below on the petition of appellant. Appellant, by answer set up the following affirmative defenses: (1) that the acts of Crone constituted a fraud on Glengarry, Birkel and appellant, and that Cooke held the legal title to the properties in trust for appellant, with a lien thereon for a sum not in excess of $12,000; (2) that Scotch Bonnet conveyed only the legal title to the properties in trust for the beneficial owner, and as security only for the balance of the purchase price; (3) that Cooke was estopped, in equity and good conscience from claiming that time was the essence of the agreement.

The court found that it was not shown that, except for the acts of Crone, Scotch Bonnet would have granted further extensions of time to Glengarry; that it was not shown that appellant had expended $200,000 in developing the properties and that it was impossible to determine what sum, if any, was expended by appellant; that it was not shown that the properties had a value in excess of $12,000; and that it was not shown that the failure of appellant "and its predecessors in interest, or any one or more of them, to pay the balance of the agreed purchase price for the mining premises and property * * * was not wilful or deliberate on their part,.

**12**

or was not the result of a grossly negligent breach of duty, or that the same was caused by conditions over which they, or either of them, had no control". The court concluded that by reason of the default of Glengarry it forfeited all its rights under the contract; that the contract and the modifications thereof should be cancelled; and that Cooke's title should be quieted. From the judgment entered to that effect, this appeal was taken.

Appellant argues that one of Glengarry's directors, Kanarick, was Crone's dummy, and gave Crone information concerning Glengarry; that Crone, therefore, was a director of Glengarry except in name; that Cooke was also Crone's alter ego; that the purchase by Crone (through his alter ego Cooke) was a purchase of property needed by Glengarry by Crone as a director (acting through his alter ego Kanarick); and that therefore, the purchase was a fraud on Glengarry, or a violation of his trust as a director by Crone, and Cooke now holds the property as an involuntary trustee under Rev.Codes of Mont.1935, § 7887, which provides in part:

"One who gains a thing by fraud * * * the violation of a trust, or other wrongful act, is, unless he has some other or better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

Appellee denies these statements and contends that there was no proof of fraud.

The situation briefly is: Glengarry had an option to purchase the mining claims given by Scotch Bonnet in 1918 to McKay at a time when Crone was not shown to have had any interest in Scotch Bonnet; there is nothing to show that the original transaction or the modifications thereof were unfair; Crone purchased the property subject to the option for $12,000 at a time when payment of $32,857.71 was required to purchase the property under the option, and when, it is alleged by appellant, Crone was a director of Glengarry through his alter ego, Kanarick; Glengarry was not obligated to pay the $32,857.71 because the contract provided it might purchase the property at its "option only"; and Glengarry was insolvent or nearly so when Crone made the purchase.

■ For the purposes of this decision, we may assume, without so deciding that Kanarick was Crone's alter ego, and that by purchasing the mining properties, subject to the option, through Cooke, also alter ego for Crone, and demanding from Glengarry $20,000 more for the property than he paid, he, Crone, considered as a director, violated the fiduciary relationship existing between him, as a director, and Glengarry. Munro v. Smith, 1 Cir., 259 F. 1. Upon such assumptions, Crone, in a proper case, might be prevented from making a profit and be compelled to convey the rights purchased by him to Glengarry. Golden Rod Mining Co. v. Bukvich, 108 Mont. 569, 92 P.2d 316. Relief might be obtained by Glengarry, its stockholders, and creditors, if the case assumed were proved. Tatem v. Eglanol Mining Co., 42 Mont. 475, 113 P. 295, 298; Pepper v. Litton, 308 U.S. 295, 306, 60 S.Ct. 238, 84 L.Ed. 281; Clark & Wilson Lumber Co. v. McAllister, 9 Cir., 101 F. 2d 709, 713; Griffin v. Smith, 7 Cir., 101 F.2d 348, 350; Burnes Nat. Bank v. Mueller-Keller Candy Co., 8 Cir., 86 F.2d 252, 254. Since the rule "is designed for the protection of the entire community of interests in the corporation—creditors as well as stockholders" (Pepper v. Litton, supra, 308 U.S. at page 307, 60 S.Ct. at page 245, 84 L.Ed. 281), and since the corporation may waive the breach of trust and ratify the transaction (McLaughlin v. Corcoran, 104 Mont. 590, 69 P.2d 597), only the beneficiaries of the trust may object to the transaction. The beneficiaries include the corporation, its stockholders and creditors, but does not include a third person. 19 C.J.S., Corporations, 156, § 783; 3 Fletcher Cyc. Corporations, Perm.Ed., § 977.

. Here, appellant is not one of the beneficiaries, but is a third person. Neither Birkel nor appellant acquired any rights in the cause of action Glengarry may have had against Crone, even if such rights were assignable, a point we do not decide. All they got, if anything, was Glengarry's rights in the property itself, but no rights in the cause of action. Compare: Dipple v. Neville et al., 82 Mont. 280, 287, 267 P. 214. We hold, therefore, . that appellant has no standing to question the purchase by Cooke from Scotch Bonnet.

■ Appellant contends that under the contract of July 10, 1918 "the complete beneficial and equitable title to the property passed to the vendee, with the Scotch Bonnet retaining the legal title as security

only"; and that therefore Cooke obtained the legal title and "should have been required to foreclose its lien". While it is true that immediately following the preamble of the instrument, Scotch Bonnet agreed to sell and McKay agreed "to purchase" the claims in question, the parties clearly expressed their intention by the subsequent provision that "it is agreed that this instrument is intended as an option in favor of said purchaser, and said purchaser shall be required to carry out the terms and conditions hereof at his option only". The purchaser incurred no obligation, but had the right to accept or reject the offer which was irrevocable so long as the payments were made at the times specified therein, unless Scotch Bonnet elected to fail to terminate it. We think the instrument clearly granted to the purchaser an option only, and foreclosure was not required.

■ Appellant relies on Rev.Codes of Mont., 1935, § 7586 which provides: "An agreement to sell and buy is a contract by which one engages to transfer the title to a certain thing to another who engages to accept the same from him and to pay a price therefor."

The statute is inapplicable because McKay did not obligate himself to accept title to the claims or "pay a price therefor".

■ It is also contended by appellant that the offer contained in the instrument was not terminated. When Cooke wrote on July 8, 1936, that it was proceeding to take over the property in accordance with the previous notice of May 1, 1936, it in effect terminated the offer contained in the contract, otherwise there would have been no reason for Cooke to "eject" Glengarry.

■ Appellant further contends that its failure to pay the amounts specified in the instrument was not wilful, and therefore it was "entitled to be relieved of the forfeiture", under Rev.Codes of Mont., 1935, § 8658, which provides: "Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty."

That statute is not applicable here because there was no "obligation" on Glengarry's part at any time, but even if there

was, it had been terminated when this action was commenced. Huffine v. Lincoln, 87 Mont. 267, 287 P. 629, 632.

■ Appellant attacks the finding of the court below to the effect that it had failed to show that the relationship between Glengarry and Scotch Bonnet were friendly, and also contends that the court below erroneously excluded evidence to show the friendship. We fail to perceive what bearing a contrary finding and the admission of such evidence, would have in the case. The mere fact that indulgence had been extended to Glengarry does not show that indulgence would be extended to appellant, but even if it did, Cooke was not prevented from ending such indulgence. Huffine v. Lincoln, supra.

■ Finally, it is contended the equity should grant appellant relief. We find no facts warranting a reversal of the trial court's action. Appellant comes here, not as a party which has expended great sums in developing the property, but as an alleged purchaser of the property from one who as a stockholder redeemed corporate property after a sale on execution. It had notice of all facts regarding the termination. We find nothing to warrant the equitable relief asked for.

Affirmed.