BRUBAKER, RESPONDENT, *v.* D'ORAZI, APPELLANT.

No. 8707

Submitted March 1, 1947. Decided April 15, 1947.

179 Pac. (2d) 538

Mr. Edward T. Dussault and Mr. Krest Cyr, both of Missoula, for appellant. Mr. Dussault argued the cause orally.

Mr. Russell E. Smith and Messrs. Pope & Smith, all of Missoula, for respondent. Mr. Smith argued the cause orally.

MR. JUSTICE CHEADLE delivered the opinion of the court.

Appeal by defendant from a decree and judgment for the specific performance of a contract between the parties, as reformed by the decree.

24

The record does not include a bill of exceptions, consisting only of the judgment roll, including the pleadings, findings and conclusions prepared by both parties, the court's findings and conclusions and exceptions thereto by both parties, order over-ruling and sustaining certain of such exceptions, the decree, and notices of appeal. Plaintiff's cross-appeal was dismissed prior to oral argument. Since the evidence adduced at the trial is not before us, the appeal must be decided on points of law, most ably presented by counsel for the respective parties.

The complaint, summarized, alleges that about April 4, 1942, plaintiff, as owner, was operating a certain retail liquor business in Missoula, consisting of a leasehold on certain described premises, store and bar fixtures and equipment, and liquor and beer licenses issued to plaintiff by appropriate public authorities permitting the conduct of such business by plaintiff; that on said date plaintiff, intending to enlist in the armed forces of the United States, and desiring to enter into an arrangement for the disposition of such business during his absence and a resumption thereof upon his return, entered into an agreement with defendant whereby the latter agreed to take over said business under terms agreed upon; that "It was further understood and agreed * * * that in the event that plaintiff returned to the city of Missoula, and if in the meantime the defendant had become the owner of said business * * *, then the plaintiff should have from the ninth day of April, 1945, to the ninth day of July, 1945, the option to re-acquire said business and the whole thereof upon the same terms that the defendant had acquired the same from plaintiff." It further alleges that defendant would so operate the business that plaintiff's option should not be defeated by conduct of defendant, and that it be maintained by renewal of the leasehold and of the liquor and beer licenses; that such leasehold and licenses were renewed and are held by defendant as a part of the business.

In support of plaintiff's right to reformation of the agreement, it is alleged that in an attempt to make a written memo-

randum of such agreement, the parties executed a writing, attached to the complaint as an exhibit; that such writing did not truly and correctly express the intention of the parties or reflect the true agreement, by reason of mutual mistake, or by a mistake of plaintiff which the defendant knew or suspected; that the whole intent and purpose of the parties, in making the agreement, was to accomplish a result which would permit plaintiff, upon his return, to have the same business which he had when the agreement was made; and further, that it was understood that plaintiff contemplated enlisting in the United States armed forces, whereas the agreement referred to enlistment in the United States Army.

The complaint alleges the enlistment by plaintiff in the United States Navy, and his subsequent discharge; that on April 27, 1945, and again on July 9, 1945, plaintiff notified defendant in writing of his wish to exercise the option, and offered in writing to pay all sums and do all things required of him under the terms of the agreement, but that defendant, disregarding his obligations without specifying any objections to said offers, advised plaintiff that the agreement was void and without legal validity and denied all obligation thereunder, and refused to permit plaintiff to exercise his said option, and refused to perform his said agreement; that plaintiff has duly performed all of his obligations under the agreement; that he has no adequate remedy at law, and offers to do all things required of him by the court in order to exercise and procure the benefit of said option. It is further alleged that the business is unique in character in that the ordinances of the city of Missoula prohibit the licensing of additional liquor establishments, by reason whereof plaintiff could not be adequately compensated for the loss incident to the refusal of defendant to comply with his agreement. Damages to the extent of $400 monthly are alleged, by reason of defendant's aforesaid refusal.

Defendant demurred generally to the complaint, and specially on the ground that the court has no jurisdiction of the subject

of the action, the demurrer being overruled. Defendant's answer admits execution of the agreement by the parties, the bill of sale by plaintiff, and the promissory notes by defendant; admits that liquor and beer licenses had been issued to plaintiff, as alleged; denies specifically that such licenses are assets or property of the business, or that plaintiff was the owner thereof or had any property interest therein.

Defendant's motion for a judgment of nonsuit, interposed at the conclusion of plaintiff's case, was denied.

Exhibit "A," attached to the complaint, is entitled "Lease Agreement," under the terms of which the premises in question, together with "certain store fixtures and all equipment used in the operation of the Havana Bar" are leased by plaintiff to defendant for a term of three years, terminating on April 8, 1945. As rental for the premises and equipment defendant agrees to pay plaintiff the sum of $5,220, in monthly installments of $145, as evidenced by two promissory notes attached. Defendant further agrees to keep the fixtures insured and to pay the taxes thereon, same to be assessed in plaintiff's name. It is agreed that $1,000, deposited by defendant with the Western Montana National Bank as a performance bond, shall, in case of defendant's default, be delivered to plaintiff, together with a certain bill of sale, hereafter mentioned. And further, "It is understood that party of the first part is enlisting in the United States Army and in the event he returns to Missoula and party of the second part has become the owner of fixtures and business known as the Havana Bar, the party of the first part shall have from April 9th, 1945 to July 9th, 1945 the option, and party of the second part hereby acknowledges receipt of One Dollar as consideration for said option, to rent the fixtures on the same terms from party of the second part as set out in this agreement, with the understanding that in the event party of the first part pays his rent promptly over a period of three years, then the ownership of said fixtures shall revert to and become the property of party of the first part."

Exhibit "A" attached to the agreement is an inventory of furniture and fixtures; exhibits "B" and "C" promissory notes in the respective amounts of $3,600 and $1,620; exhibit "D" a bill of sale executed by plaintiff, conveying to defendant the furniture and fixtures described in exhibit "A." This contains a paragraph identical with that above quoted from the agreement proper.

The trial court substantially adopted findings of fact and conclusions of law proposed by plaintiff. The pertinent portions of the findings are:

1. That in April, 1942, plaintiff was the owner of a liquor business in Missoula, known as the Havana Bar, consisting of federal, state and city liquor and beer licenses, a lease running from April 9, 1942, to April 9, 1945, a stock of liquors, trade fixtures, and good will.

2. That plaintiff, intending to enlist in the armed forces of the United States, entered into an agreement with defendant that plaintiff would sell and defendant would buy all of such business and no specific part thereof; that under the terms thereof defendant paid plaintiff $1,300, and a sum of money representing the unusued portion of the liquor licenses and the liquor stock, and two promissory notes, one being collateral for rental on the building; that plaintiff transferred to defendant the Havana Bar, including the liquor stock, licenses, fixtures, good will, and lease.

3. That it was agreed that during the period April 9, 1945, and July 9, 1945, plaintiff should have an option to repurchase such business and all of its components on the identical terms on which it had been sold by him; that it was contemplated by both parties that the defendant should renew the liquor licenses and lease as they expired, and that the renewed licenses and lease should be a part and parcel of such business.

4. That the written agreement between the parties did not, by reason of mutual mistake, express the true intention of the parties, in that in referring to plaintiff's option to repurchase, it mentioned only the fixtures, whereas it was the intention

28

that plaintiff should have the option to repurchase the entire business, on the same terms as he had sold them.

5. That between April 9, 1945, and July 9, 1945, plaintiff notified defendant of his intention to repurchase the property according to the terms of the option agreed upon, but that defendant refused to perform the option agreement and advised plaintiff that he would not perform; that on July 9, 1945, plaintiff made a formal tender of performance to defendant, and the latter did not specify any objections to the manner or mode of such tender or to the amounts stated therein to be due; that the reason given by defendant at the trial for his refusal to perform as requested was that the $300 earnest money mentioned in the agreement was not included in the tender.

6. That the existing lease on the building prohibits an assignment thereof, but does not prohibit a sublease; that under the agreement the defendant is required only to sublease, and not to assign such lease to plaintiff.

7. That consent of the Montana state liquor control board is necessary to an assignment of the existing liquor licenses issued to the Havana Bar, and that the overwhelming probability is that such board will consent to such assignment if, as and when defendant puts plaintiff in a position to request same.

8. That such business is a unique one, and that the failure to transfer the same, as required under plaintiff's option, cannot be compensated in money, and that it would be extremely difficult to measure the amount of damages suffered by plaintiff by reason of defendant's refusal to transfer the business.

9. That plaintiff has been damaged by defendant's refusal to perform, to the extent of $150 per month.

10. That no fraud exists, but that the difficulties between the parties have arisen as the result of an honest difference of opinion as to the proper construction to be placed upon the agreement.

The court also adopted certain findings proposed by defendant, to the effect that liquor and beer licenses have been issued

to new saloons in Missoula by the liquor board and the city since the commencement of this action; that plaintiff has made no attempt to obtain liquor and beer licenses since April, 1942; that neither the lessors of the premises in question, the Western Montana National Bank, or the liquor board are parties to the action. Conclusions of law in conformity with the findings were adopted.

Appellant's specifications of error are principally directed at the trial court's findings, and its failure to make findings as proposed by appellant. Since the evidence is not before us, we are confronted at the outset with the general rule that, in the absence of a bill of exceptions, a trial court's findings of fact will be presumed to be supported by the evidence and the pleadings deemed amended to conform to the proof. This court said, in Thelen v. Vogel, 86 Mont. 33, 281 Pac. 753, 754:

"Certain objections to the court's findings of fact and conclusions of law were also urged, but these could have merit only if the record contained a bill of exceptions; as it does not, we may consider only the judgment roll (section 390, Rev. Codes 1921; Bohon v. Bitter Root Sales Co., 82 Mont. 260, 266 Pac. 645), and must presume that the evidence was sufficient to warrant the result reached. (Bond Lumber Co. v. Timmons, 82 Mont. 497, 267 Pac. 802).

"* * * However, as Anna K. Vogel, guardian, answered over and went to trial, and the record here contains no bill of exceptions, as to her appeal, we must assume that the proof was ample and considered the complaint as amended to conform thereto."

To the same effect see Park Saddle Horse Co. v. Cook, 89 Mont. 414, 300 Pac. 242; Shaw v. McNamara & Marlow, 85 Mont. 389, 278 Pac. 836.

Under the circumstances we think our inquiry must be restricted to the question of whether the determining conclusions of law and the decree are justified by the facts as found by the court. This depends upon validity of the court's ruling that the agreement between the parties, as reformed,

is specifically enforceable. This, in turn, involves the correctness of the court's conclusions and rulings, (1) that the contract is unique and that plaintiff has no adequate remedy at law; (2) that the court is warranted in decreeing a transfer of the beer and liquor licenses, even though they are by law made "non-transferable except and only with the consent of the board [Montana liquor control board]."

The question of the transfer of the licenses was injected into the case by the court's reformation of the contract to include them as a part of the business, and to provide for their transfer to plaintiff, with the other components of the business, upon the exercise of his option. In order to permit the revision of a written contract it must be established that its failure to express the true intention of the parties was the result of (a) fraud; (b) a mutual mistake of the parties; or (c) a mistake of one party, which the other at the time knew or suspected. Sec. 8726, Rev. Codes. The complaint alleges mutual mistake of the parties in the respect above indicated, and the court's finding is in conformity to such allegation. Under the rule as to findings, above enunciated, we are not permitted to disturb such finding, and must assume that it was supported by the evidence, even though the contract appears to have been ineptly and carelessly drawn if such, indeed, was the true intention of the parties. In view of the court's specific finding of mutual mistake in the respects alleged, we must assume that the evidence was sufficient to support such finding. We have experienced considerable difficulty in attempting to reconcile the court's findings with reference to mutual mistake as expressed in numbered paragraphs 4 and 10 above. But in view of the presumption of the regularity of judgments, especially in the absence of a bill of exceptions, and in view of the specific factual situation expressed in the former, we shall treat the latter as surplusage. The decree demonstrates the apparent intention of the court in this regard, and we deem it our duty to recognize that intent if it may be so recognized without doing violence to the rules of construction. Where, as here, a

general finding is inconsistent with a specific finding, the former will be rejected and the decree held to be supported by the latter. Featherman v. Hennessy, 43 Mont. 310, 115 Pac. 983.

Appellant argues that the agreement is not subject to reformation as to the beer and liquor licenses, for the reason that, under the provisions of section 8, Chapter 84, Laws of Montana for 1937, same "shall be non-transferable except and only with the consent of the board [liquor control board]." He suggests that provision for transfer of the licenses was omitted from the agreement because the parties determined that such a provision would be invalid and illegal without the prior consent of the board. Unfortunately we are unable to resolve that question, but appellant's contention is contrary to the trial court's finding. The question before us is that of the validity of the order directing assignments of such licenses by defendant to plaintiff. We find no merit in appellant's argument that such licenses, being neither contracts or rights of property, are not subject to transfer. The statutory provision above adverted to does not render the licenses non-transferable, even though a transfer may, perhaps, be made ineffectual by withholding of the board's consent. A very similar situation was presented in Watson Bros. Transp. Co. v. Jaffa, 8 Cir., 143 F. (2d) 340, 346, in which it is said:

"It is contended for Jaffa and Holdcroft that it was beyond the power of the District Court to grant any effective relief to Watson Bros., Inc., in this action because even if Jaffa were compelled by the court's decree to execute the documents required by the order of the Commission, such documents would not of themselves vest the right to operate Jaffa's trucking routes in Watson Bros., Inc., and it is pointed out that all such transfers of operating rights over interstate trucking routes are without validity except as they are approved by the Commission. 49 U. S. C. A. sec. 5 (2).

"But a man's obligation under his lawful contract is not a whit less binding upon him because of the fact that an approval

of the transaction must be had before the party to whom he has obligated himself can receive full benefits. The power vested in the Commission in respect to transfers of interstate trucking routes does not relegate the owners of such routes to the status of non compos persons. Such owners remain fully responsible in morals, law and equity on such undertakings as they enter into in respect to their routes. The fact that Jaffa's agreement with Watson Bros., Inc., could not of itself enable Watson Bros., Inc., to operate the routes did not justify refusal of the court to try the charge that Jaffa had become bound to fulfill the obligation undertaken by him. The mere fact that a contract or transfer is subject to the approval of a public agency is not a bar to a decree compelling a party to execute the documents necessary for the consummation of the contract or transfer. This principle is well established in the cases involving agreements to transfer liquor licenses, which, like the transfer in question here, must be validated by the licensing authority, In re Fisher, D. C. Mass., 98 F. 89; Fisher v. Cushman, [1 Cir.,] 103 F. 860, 51 L. R. A. 292; In re McArdle, D. C. Mass., 126 F. 442; In re Becker, D. C. Pa., 98 F. 407; In re Wiesel, D. C. Pa., 173 F. 718; In re John F. Doyle & Son, 3 Cir., 209 F. 1; * * *

"'* * * Similarly, in the instant case, a court of equity can require that Jaffa perform that which is necessary for plaintiff to enjoy and exercise the rights acquired by him under his contract. The plaintiff is entitled, at least, to this much aid from this court. There is no reason for the court to aid a party who refuses to carry out those acts necessary to effectuate the intention and contract of the parties by speculating as to the willingness or unwillingness of the Commission to grant approval. Cf. Lennon v. Habit, supra [216 N. C. 141, 4 S. E. (2d) 339]. And where, as in this case, the Commission has indicated by its description of the lease as 'just and reasonable' and 'consistent with the public interest,' no reason to deny specific performance is presented. There will be no effort in an appropriate decree to compel the transfer of a lease dis-

approved by the Interstate Commerce Commission. See Axelrod v. Osage Oil & Refining Co., 8 Cir., 29 F. (2d) 712, 730.''

Appellant contends that the agreement is not specifically enforceable because of the provisions of section 8714, Revised Codes, as follows:

''Except as otherwise provided in sections 8708 to 8737, the specific performance of an obligation may be compelled: * * *

''2. When the act to be done is such that pecuniary compensation for its non-performance would not afford adequate relief;

''3. When it would be extremely difficult to ascertain the actual damage caused by the non-performance of the act to be done. * * *.''

The finding in this regard is:

''The court finds that the business of the Havana Bar is a unique business and that the failure to transfer the same, as required under the terms of the option cannot be compensated in money and that it would be extremely difficult to measure the amount of damages suffered by the plaintiff by reason of the defendant's refusal to transfer the said business.''

Again we must assume the correctness of the finding and that it was supported by the evidence. Appellant reasons that since plaintiff placed a value on the business when the agreement was entered into, the finding that defendant's failure to transfer cannot be compensated in money is necessarily erroneous. But that is by no means determinative, and we may not speculate on what grounds the court based its finding.

Appellant relies on the presumption provided by section 8717, Revised Codes, that the breach of an agreement to transfer personal property can be adequately relieved by pecuniary compensation. But such presumption is a rebuttable one (Gilfallan v. Gilfallan, 168 Cal. 23, 141 Pac. 623, Ann. Cas. 1915D, 784), and was overcome by the finding and the evidence upon which it was based. Additionally, it would seem that the finding is supported by the presumption, provided in the same section, that the breach of an agreement to transfer real prop-

34

erty cannot be adequately relieved by pecuniary compensation. Under statute (secs. 6723 and 6727, Rev. Codes) and decisions of this court (Wheeler v. McIntyre, 55 Mont. 295, 175 Pac. 892), the leasehold involved created an interest in land. And see 58 C. J. 1026; Dean v. Brower, 119 Cal. App. 412, 6 Pac. (2d) 580. And the rule is that where real and personal property are involved in the same contract, the jurisdiction to grant specific performance in regard to the realty carries the right to grant relief by specific performance in relation to the personal property. 49 Am. Jur. 150; 58 C. J. 1044.

Appellant next contends that relief by specific performance is not available to plaintiff because of want of mutuality, as required by section 8716, Revised Codes. Suffice it to say that the obligation of defendant under the decree is conditioned upon payment by plaintiff of the amounts found by the court to be due the defendant.

We have considered appellant's further specifications of error, based upon his contentions that the trial court has no jurisdiction over the subject matter of the action, and that plaintiff's offer to perform was insufficient. We think the former to be without merit, and that we are bound by the court's finding as regards the latter.

The judgment is affirmed.

Associate Justices Choate, Angstman and Metcalf concur.

Mr. Chief Justice Adair (concurring).

While plaintiff alleged that he could not be adequately compensated for the loss incident to the refusal of the defendant to comply with his agreement because the retail liquor business is unique in character in that the ordinances of the city of Missoula prohibit the licensing of additional liquor establishments, yet such uniqueness of character vanishes with the absence of the power of cities to enact such ordinances so prohibiting the licensing of additional liquor establishments. See State ex rel. Wiley v. District Court, 118 Montana 50, 164 Pac. (2d) 358; Stephens v. City of Great Falls, 119 Montana 368, 175 Pac.

(2d) 408; State ex rel. McCarten v. Corwin, 119 Montana 520, 177 Pac. (2d) 189.

Furthermore, except where a statute provides that the holder of a liquor license may sell or assign it, with the consent and approval of the licensing authorities, a license is not assignable or transferable and a transferee is not protected by the license. Where transfers are permitted, they are good only in favor of persons who are not denied the right to hold licenses originally.

I concur in the opinion subject to the foregoing qualifications.