LIGHT ET AL., RESPONDENTS, v. ZEITER ET UX., APPELLANTS.

No. 8932

Submitted February 2, 1950. Decided May 29, 1950.

219 Pac. (2d) 295

Mr. Emmet O'Sullivan, Harlowton, Mr. John J. Cavan, Harlowton, for appellant. Mr. O'Sullivan and Mr. Cavan argued the cause orally for appellants.

Mr. Franklin S. Longan, Billings, for respondent. Mr. Longan argued the cause orally for respondents.

MR. CHIEF JUSTICE ADAIR:

Six plaintiffs, Ed Light, Lucy Light, H. R. Sult, Edna H. Sult, Horace Green and Hazel Green, were and are the owners of a certain described lot or parcel of land situate in the county of Wheatland together with the buildings thereon and all stock and fixtures in said building.

On April 2, 1947, plaintiffs as vendors and Herman G. Baehler, Alice V. Baehler, Archie C. Zeiter and Cecelia C. Zeiter, as vendees, made, entered into, and signed a written contract for deed wherein plaintiffs agreed to sell and the vendees agreed to buy "that certain lot or parcel of land situate in the county of Wheatland, State of Montana and described as follows: Tracts Thirteen (13), Fourteen (14) and Fifteen (15) in Section 23, Township 8 North, Range 15 East situated in Liberty Park Subdivision in Wheatland County, Montana, *together with the buildings thereon and all stock and fixtures in said building,* less land deeded to the State of Montana for Highway purposes," (emphasis supplied) for the agreed consideration of $27,000 to be paid in five installments as follows: $500 cash on the signing of the contract; $10,000 on or before April 15, 1947; $2,500 on or before September 15, 1947; $3,500 on January 1, 1948, and $10,500 on January 1, 1949, deferred payments to carry interest at the rate of 6% per annum.

The contract provides for the placing in escrow of a good and sufficient deed of general warranty to be delivered to vendees

upon the performance of the contract and further provides that *"all buildings and improvements* now on the land *and the fixtures* within the building shall not be removed from said lands but shall remain the property of the parties of the first part [vendors] until this contract shall be completely performed and the deed delivered to the said second parties [vendees] * * * and if it [the default] is the payment of money [the notice thereof] shall contain the amount necessary to cure the breach and if the same is not cured within thirty days *the lands and the buildings and the improvements* and all payments made as *the stock* which shall be substituted for the original stock, as per agreement, shall be and forever remain the absolute property of the parties of the first part [vendors] and the parties of the second part [vendees] shall have no right or claim thereto." Emphasis supplied.

On April 2, 1947, on the signing of the contract, the vendees paid to plaintiffs the first installment of $500 cash and on April 15, 1947, the vendees paid the further sum of $10,000 called for by the contract, upon receipt whereof and on the date of such payment, possession of the described property was delivered to the vendees.

Prior to and at the time possession was so delivered to the vendees a bar known as the "Corral Club" was operated on the described premises by one "H. F. Green" under a retail beer license and a retail liquor license issued to such licensee, as owner, by the Montana liquor control board, and covering the license year 1946-1947.

In the latter part of June 1947, being almost three months after the execution of the contract for deed, "H. F. Green" executed and delivered to the defendants Archie C. Zeiter and Cecelia C. Zeiter, his wife, a written assignment of the 1946-1947 retail beer and liquor licenses so standing in the name of the assignor "H. F. Green."

Following the making and delivery to them of the assignment of the licenses the defendants Archie C. Zeiter and Cecelia C.

Zeiter filed with the Montana liquor control board the assignment of the "H. F. Green" licenses together with their application for the issuance to them of retail beer and retail liquor licenses for the premises for the new license year beginning July 1, 1947.

The Montana liquor control board approved and consented to the assignment so executed by "H. F. Green" and, on July 1, 1947, issued to and in the names of Archie C. Zeiter and Cecelia C. Zeiter, as owners, retail beer license No. 1483 and retail liquor license No. 1387, authorizing defendants to sell beer and liquor at retail in and from the premises, pursuant to which authority defendants operated a bar thereon from July 1, 1947, until April 20, 1948, being the day following the commencement of this suit.

The vendees failed to pay any part of the installments which, under the contract, became due on September 15, 1947, and on January 1, 1948, respectively.

On September 22, 1947, vendees were served in the manner provided in the contract with a writing signed by plaintiffs designated "Notice Terminating and Cancelling Contract for Deed," stating the amount due and owing to plaintiffs and notifying the vendees that "on or before 30 days from date hereof all your rights and interest in the property above described shall cease and terminate and the contract shall be, by these presents, cancelled and terminated, and you are required and demanded to give up and surrender possession of said real and personal property and deliver the same to the undersigned * * *."

The vendees failed to pay any part of the installment due September 15, 1947, within said 30 days or at all and on October 29, 1947, two of the vendees, viz., Herman G. Baehler and Alice V. Baehler, his wife, executed and delivered to Ed Light, H. R. Sult and Horace Green, as grantees, a quitclaim deed of all the right, title, interest, possession and equity of the Baehlers in the property described in the contract for deed. Thus did the Baehlers surrender and turn over to three of the plaintiffs all the interest or equity acquired by them through the contract.

The failure to pay the installment due September 15, 1947, or any part thereof on or before 30 days from and after September 22, 1947, on which date the vendees were served with the notice terminating and cancelling the contract for deed, forfeited all defendants' rights thereunder and made of such contract a dead instrument and rendered the continued occupation of the premises a trespass.

No part of the installment which became due January 1, 1948, was paid and on February 3, 1948, defendants were served with a second notice signed by plaintiffs addressed: "To: Archie C. Zeiter and Cecelia C. Zeiter, his wife, at Harlowton, Montana," notifying defendants of their default and setting forth verbatim the provisions of the contract pertaining to default, notice, forfeiture, and cancellation of the contract.

On March 18, 1948, a third notice signed by plaintiffs was served upon defendants stating the amount in which defendants were then in default and concluded with the further notice that, "You are further notified under the provisions above quoted that this is notice likewise that no further notice of cancellation and forfeiture shall be given if the breach is not cured, but that the parties shall, following the expiration of thirty (30) days, sue to cancel said contract and to forfeit the same."

April 19, 1948, plaintiffs commenced this suit in equity against the defendants, Archie C. Zeiter and Cecelia C. Zeiter, and on that day caused the latter to be served with process herein.

On the following day, April 20, 1948, the defendants Zeiter delivered to plaintiffs possession of the whole of the premises and property described in the contract for deed and plaintiffs have since continued in possession thereof.

When the Zeiters so vacated and turned the premises and property over to plaintiffs, they retained and took with them the retail beer license and the retail liquor license so issued to them by the Montana liquor control board, on its approval of the written assignment from "H. F. Green" and of defendants'

application for new licenses for 1947-1948, and upon the payment by defendants of the statutory fees therefor.

Defendants value the licenses so standing in their names at $7,000 and offer to assign them to plaintiffs for that sum.

Plaintiffs rejected defendants' offer, claiming that the words "stock and fixtures" employed in the contract for deed "included said licenses and the return of the same upon default as described in the contract" and here seek to have a court of equity so construe the contract; to revive and reform same, and by decree, to compel a transfer and assignment to plaintiffs of defendants' licenses "upon payment by plaintiffs to defendants of the pro-rata share of the cost thereof between the dates the plaintiffs acquired possession and the use thereof and their expiration date." Such "pro-rata share of the cost" was found by the district court to be the sum of $77.74.

*Complaint.* Plaintiffs seek to invoke the jurisdiction of a court of equity by pleading "mutual mistake" of the ten persons signing the written contract of April 2, 1947.

In their complaint plaintiffs aver: That by "mutual mistake" the contract does not truly express the intention of the parties; that the written contract was intended by the parties to embody and evidence an understanding and agreement that part of the consideration "was an agreement to also transfer and assign all local, state and federal beer and liquor licenses, for the year 1946, *owned by plaintiffs but standing in the name of H. N. Green,* otherwise known as Horace Green, *one* of the plaintiffs herein named, to the defendants for their use and operation in the 'Corral Club' * * * *an establishment for the sale and dispensing of beers and liquors;"* that "said mutual mistake consists in the inadvertent failure of the parties *to incorporate* into the written contract their *oral* understanding that all licenses for the sale and dispensing of beers and liquors *issued to the plaintiffs, or any one of them for the convenience of the others, and which necessarily were used by them in the operation of the premises* sold to the defendants were, and of necessity could not be considered otherwise, the substantial part of the consideration con-

tracted to be paid by the defendants, as defendants well knew; that said mistake was excusable in that prospective purchasers, and actual purchasers of establishments vending beers and liquors *take for granted* that beer and liquor licenses are a part of the consideration for the sale of the establishment where said licenses are used, *whether expressed in the agreement or not,* otherwise the establishment could not operate; that said plaintiffs and defendants *took for granted* that said liquor licenses were part of the consideration for said sale between them; that ''said agreement does not truly express the intention of the parties to provide for plaintiffs' reacquiring said licenses upon default by the defendants in the performance of all covenants and conditions provided in said contract; that the inadvertence of the said parties signatory in failing to provide for *reacquiring* the ownership and possession of said licenses is excusable in that *neither the plaintiffs and defendants nor any of them, had any experience with the transfer or sale of beer and liquor licenses by contract and all of the parties were unaccustomed to the same;* that until defendants defaulted in their payments under said contract and plaintiffs employed counsel to ascertain their rights thereunder against the defendants, *plaintiffs labored under the impression that the word 'stock and fixtures' included said licenses and the return of the same upon default* as described in the contract; that the defendants likewise labored under the same impression until they were advised differently; that said mistake defeats the intentions of the parties hereto in that defendants could by payment of first installment only acquire absolute ownership in valuable beer and liquor licenses without any redress for the plaintiffs; that if said plaintiffs cannot *reacquire* said licenses in this action and prevent defendants removal and transfer of the same, plaintiffs will suffer irreparable damage and gross injustice for *if upon repossession of the premises by voluntary relinquishment of the defendants* before judgment herein, or by judgment of this court, the defendants remove said licenses from the premises *the plaintiffs will forthwith have to close down said establishment and cease operating the same;''*

that ''said 'Corral Club' was described in the contract as 'improvements' upon the premises; that ''the plaintiffs cannot have issued to them beer or liquor licenses upon original application to the State Liquor Control Board; that without said licenses *of the defendants* the possession of the premises will be almost valueless to the plaintiffs for the reasons heretofore alleged; that the defendants have likewise threatened *to allow the plaintiffs to reacquire possession of said premises,* but have consistently asserted that plaintiffs cannot *reacquire* possession of title to said licenses.'' Emphasis supplied.

*Demurrer.* Defendants demurred to plaintiffs' complaint on the grounds: (1) Defect of nonjoinder of parties defendant in omitting to make Herman G. Baehler and Alice V. Baehler who signed the contract for deed parties to the action; and (2) that the complaint fails to state a cause of action against defendants, or either of them.

*Answer.* Upon the overruling of their demurrer, defendants filed an answer, the first portion whereof specifically admits certain allegations of the complaint, specifically denies other allegations thereof, and generally denies all the allegations not so specifically admitted or denied. The answer specifically denies that there was a mutual mistake in the making of the contract for deed or that such contract does not express the true intent of the parties thereto and affirmatively alleges that such contract ''was intended to and did express the actual intent of the parties'' thereto.

Defendants specifically ''deny that they were under the impression that the words 'stock and fixtures' included said licenses'' and allege that they ''understood said phrase in its ordinary meaning'' and allege that they sought advice upon the interpretation of said agreement only when informed that plaintiffs construed such words as is alleged in their complaint.

As to the offer to do equity pleaded in paragraph XI of the complaint, the defendants deny that plaintiffs' offer to pay ''the pro-rata share of the cost'' of the licenses is an equitable offer and allege that to be equitable it should be a cash offer in the

sum of $7,000; allege that the contract for deed was cancelled and fully terminated on October 22, 1947, by their defaults and the notices so served upon them by plaintiffs; allege that at all times since the termination of the contract for deed that defendants have been ever ready and willing to turn over to the said plaintiffs the property described in such contract, and that defendants have actually delivered possession of said property to the said plaintiffs.

The answer also separately states five separate affirmative defenses. In the first separate defense defendants alleged that they made default in the payment of the installment due September 15, 1947; that on September 22, 1947, they were duly served with plaintiffs' notice terminating and cancelling the contract for deed; that defendants failed to make any of the payments necessary to cure the breach on or before October 22, 1947, or at all, and that "under the terms of said notice the said contract terminated on that date [October 22, 1947] and the property described in said contract became the property of said plaintiffs and the defendants had no right or claim thereto, and that by reason of said termination, the said contract ceased to exist and could not become the subject of reformation."

We do not deem it necessary in our determination of this appeal to separately review the other four affirmative defenses pleaded in the answer.

*Reply.* By reply plaintiffs placed in issue the affirmative matters pleaded in the answer.

*Trial.* A trial of the issues so made was had before the court, sitting without a jury, following which, written findings of fact and conclusions of law were filed and decree entered for plaintiffs.

*Decree.* The decree ordered and adjudged:

1. That the contract be reformed by inserting and including "among the property sold to defendants the beer and liquor licenses for 1946-1947 standing in the name of H. F. Green * * *;"

2. That defendants "forthwith surrender and turn over to

the plaintiffs the absolute possession of * * * the beer and liquor licenses which are renewals of the licenses assigned to the defendants by H. F. Green, including the 1949-1950 licenses'' and said ''defendants shall forthwith assign the current beer and liquor licenses to the plaintiffs;''

3. That the clerk of court ''shall surrender to the defendants the sum of $77.74 lodged with her when the defendants have complied with'' the two preceding paragraphs of the decree;

4. That the ''contract for deed as reformed is hereby cancelled and the rights and payments of the defendants are forfeited and the defendants have no right, title, interest or estate whatever in said * * * licenses * * * and the title of the plaintiffs thereto is good and valid;''

5. That ''defendants are permanently enjoined from in any manner disposing of the beer or liquor licenses now in their possession, or any renewals thereof, or from applying to the Montana Liquor Control Board for the transfer or assignment of the same to any other parties than the plaintiffs;'' and

6. The court ''reserves jurisdiction to settle and determine any controversy which may arise between the parties in the performance by them of the terms of this decree.''

Defendants specify as error the overruling of their demurrer to the complaint, the making of the trial court's conclusions of law and the making and entering of the above decree.

The chief issue in this suit became and is the right of the six plaintiffs to demand and the authority of a court of equity to adjudge and order the defendants to ''forthwith surrender and turn over to the plaintiffs'' and make an *involuntary* assignment to plaintiffs of the retail beer license and the retail liquor license so issued on July 1, 1947, by the Montana liquor control board, to and in the names of the defendants, Archie C. Zeiter and Cecelia C. Zeiter, only.

The statute authorizes defendants ''with the consent of the board,'' R. C. M. 1947, sec. 4-410 to make a *voluntary* assignment of their licenses to a qualified person or to qualified persons, R. C. M. 1947, secs. 4-401, 4-402, subd. 4, 4-403, 4-408, 4-409,

4-412, subd. 5, having the occupancy and use of "the premises in respect to which [they are] issued," R. C. M. 1947, sec. 4-410, provided such "premises are suitable for the carrying on of the business." R. C. M. 1947, sec. 4-408. Assuming that plaintiffs are qualified persons and that their premises are suitable for carrying on the business, the plaintiffs, with the consent of the board, are privileged to make a deal with the defendants for a *voluntary* transfer of the licenses. However, a *voluntary* transfer is one thing while an *involuntary* assignment and coerced surrender, effected by court decree after making for the parties a contract to which they did not and could not lawfully agree, is quite another matter.

The 1946-1947 licenses for the premises were not transferred to defendants on April 2, 1947, when the contract for deed was entered into and signed nor were they transferred to defendants by any of the terms or provisions set forth in such contract.

It affirmatively appears from the allegations of plaintiffs' complaint as well as from the trial court's findings of fact that at the time of the signing of the contract for deed no licenses had been issued to five of the plaintiffs and that they had neither beer nor liquor license to transfer; that at such time the only retail beer license and the only retail liquor license for the premises were the licenses issued to and standing in the name of "H. F. Green," only, and that "H. F. Green" made no transfer or assignment of his licenses in the written contract for deed nor at the time such contract was executed, nor did "H. F. Green" make any transfer or assignment of the licenses for the premises until in June 1947, being almost three months after the signing of the contract for deed and shortly before June 30, 1947, at midnight whereof the 1946-1947 licenses would expire. The assignment so made, immediately before the expiration of the "H. F. Green" licenses, merely transferred to the assignees the preferential privilege accorded to the assignor to have new licenses issued to his assigns for the new license year beginning July 1, 1947, irrespective of the limitations established by the

"Quota Law," Chapter 226, Session Laws of 1947, R. C. M. 1947, sec. 4-403.

Thus defendants did not acquire their licenses through the written contract of April 2, 1947, which plaintiffs here ask the court to reform. Defendants acquired their preferential privilege to be granted the 1947-1948 licenses through the much later written assignment executed on June 26, 1947, by the licensee "H. F. Green," in favor of the defendants Archie C. Zeiter and Cecelia C. Zeiter.

It was this assignment from "H. F. Green," the Montana liquor control board consenting, that effected the transfer to defendants of the 1946-1947 retail beer and liquor licenses for the premises. The validity of the "H. F. Green" assignment was not challenged nor did plaintiffs ask that it be reformed.

Neither the contract for deed of April 2, 1947, nor the "Notice Terminating and Cancelling Contract for Deed" served on defendants on September 22, 1947, nor the quitclaim deed of October 29, 1947, from the Baehlers, grantors, to the plaintiffs Ed Light, H. R. Sult, and Horace Green, grantees, nor the notice served upon defendants February 3, 1948, nor the notice served March 18, 1948, makes any mention whatever of any beer or liquor licenses.

In paragraph XI of their complaint plaintiffs allege: "That the plaintiffs offer to do equity as follows: To pay the defendants the pro-rata share of the original cost of all licenses issued to defendants for 1947-1948 for the plaintiffs' use thereof until renewal date of each license; and to cancel *defendants' note* as paid in full for purchase from the plaintiffs of 62 cases of whiskey in a warehouse in Billings, Montana, as in said contract provided." Emphasis supplied.

The "defendants' note" last above referred to apparently is a promissory note given under the provisions of the next to the last clause in the written contract for deed of April 2, 1947, which provides: "It is further agreed that the parties of the first part [plaintiffs] have 62 cases of whiskey in a warehouse in Billings, Montana, and the parties of the second part [the

vendees] agree to buy the same at the market place as of April 2nd, 1947, and to sign a note for the purchase price of the same, and it is further agreed that the purchase price of said whiskey shall be paid on or before the completion of this contract.''

However, the law did not, and it does not allow any of the plaintiffs to own or operate a bar on their premises or to conduct thereon the business of selling or keeping for sale any alcoholic liquor without first having obtained from the Montana liquor control board a retail beer license and a retail liquor license duly issued to and in the name of each person so owning and operating such bar and business.

''Any person who has not been issued a license under this act, who shall sell or keep for sale any alcoholic liquor, shall be guilty of a felony and upon conviction thereof shall be fined not less than one thousand dollars ($1000.00) nor more than five thousand dollars ($5,000.00), or be imprisoned in the state prison for not less than one (1) nor more than five (5) years, or both such fine and imprisonment.'' R. C. M. 1947, sec. 4-420. So reads the law.

The state not only has the right but it demands to know the identity of all persons to whom it grants the privilege of engaging in the liquor business. The law requires that all such persons come out in the open and there reveal to the state their exact interest, concern and participation when trafficking in liquor. A number of such participants may not hide their identity from the law by standing back in the shadows and permitting but one of their number to come forth, speak, act and front for them. The state requires that all licenses by it issued granting the privilege to sell liquor at retail within its borders be signed by the licensees; that the licenses be posted in a conspicuous place on the premises in respect to which they are issued, R. C. M. 1947, sec. 4-410; and that no person shall sell or keep for sale any alcoholic liquor or otherwise traffic in liquor cept he be a person duly licensed under the law. Ch. 84, Laws of 1937, secs. 1 and 18, R. C. M. 1947, secs. 4-401 and 4-420.

For plaintiffs to lawfully sell ''62 cases of whiskey in a ware-

house in Billings, Montana" as they contracted in writing to do, required that they first have a license granting them that privilege and duly issued to them by the Montana liquor control board.

Plaintiffs affirmatively plead that the "Corral Club" was ▆▆▆ an establishment for the sale and dispensing of beers and liquors. The owners and operators of such business were required by law to first obtain both a beer and a liquor license before dispensing their wares. Should the "Corral Club" bar be owned and operated by the six plaintiffs as partners, then the law requires that the licenses must be issued to the partnership and must set forth "the names of the persons conducting the business." R. C. M. 1947, sec. 4-410. All the partners must be qualified persons. The disqualification of a single partner works a disqualification of all the partners. Perry v. Luding, 123 Mont. 570, 217 Pac. (2d) 207, 217; Coletti v. State Board of Equalization, Cal. App., 209 Pac. (2d) 984.

In their complaint the six plaintiffs affirmatively plead that the 1946-1947 licenses for the "Corral Club" bar were "owned by plaintiffs but standing in the name of H. N. Green" and that by "mutual mistake" the parties thereto inadvertently failed "to *incorporate* into the written contract their *oral* understanding that all licenses for the sale and dispensing of beers and liquor issued to plaintiffs, *or any one of them for the convenience of the others,* and *which were necessarily used by them in the operation* of the premises sold to the defendants" thereby establishing that at least five of their number were unlicensed and illegal owners and operators of such bar. No bar in this state may be lawfully owned and operated by *six* persons under a liquor license issued to and in the name of but *one* person, nor does the law permit six persons, under a liquor license issued to and in the name of but one person, to establish ownership and the right to exercise the *privilege* granted by such liquor license so issued to and standing in the name of but *one* of their number regardless of whether such arrangement was brought about by

design, ignorance, lack of experience or "for the convenience of the others." Nor may plaintiffs excuse their failure to comply with the requirements of the law by pleading that they were "unaccustomed to" owning and operating bars or trafficking in beer and liquor licenses or because they "labored under the impression that the words 'stock and fixtures' included said licenses."

The law is that "no person, except the licensee therein named, shall exercise any of the *privileges* granted thereunder." R. C. M. 1947, sec. 4-410.

A retail liquor license issued by the state to any qualified licensee "is a matter of *privilege* rather than of right, *personal to the licensee,* and is neither a right of property, nor a contract or contract right, in the legal or constitutional sense of those terms." Emphasis supplied. 48 C. J. S., Intoxicating Liquors, sec. 99, page 223, n. 72, 76; Perry v. Luding, supra. "It does not run with the business conducted under the privilege it grants and is not an asset of it." 48 C. J. S., Intoxicating Liquors, sec. 109, page 228, n. 44. It is neither "lands," "buildings," "improvements," nor "stock and fixtures."

When the contract for deed was executed no one other than the lone licensee "H. F. Green" had any retail beer or liquor license for the premises and, having no licenses to transfer or assign, it is clear that at least five of the plaintiffs had none "to *incorporate* into the written agreement." Hence their omission and failure to *incorporate* that which they never owned or had any right to transfer cannot be said to evidence a "mutual mistake" from which they are entitled to relief in a court of equity. See: 45 Am. Jur., Reformation of Instruments, secs. 46, 47, pp. 609, 610, n. 18-20; sec. 49, p. 611, n. 15; sec. 50, pp. 611, 612, n. 19, 20; sec. 79, p. 632, n. 4, 5; sec. 103, p. 646, n. 15, 16.

"A court of equity cannot reform an instrument except on allegations which make out a case for the equitable remedy asked. As in other actions, all facts necessary to make out a case must be pleaded. And if the complaint seeks to reform a written in-

strument and also to enforce it when reformed, the allegations must be sufficient for both purposes.'' 45 Am. Jur., Reformation of Instruments, sec. 98, p. 644, n. 4, 6. Compare: Auerbach v. Healy, 174 Cal. 60, 161 Pac. 1157.

Plaintiffs' complaint not only fails to state facts sufficient to entitle them to the licenses in question but it affirmatively shows that they have no right thereto.

Defendants acquired their right to the licenses by: (1) Acquiring suitable premises through their written contract with plaintiffs; (2) obtaining from the licensee ''H. F. Green'' an assignment of the 1946-1947 licenses for the premises; and (3) obtaining the Montana liquor control board's consent to the assignment and approval of their qualifications and application for the 1947-1948 licenses. Plaintiffs have wholly failed to plead or establish a right in themselves to have a court of equity, by decree, wrest from defendants their licenses so acquired or to coerce defendants into making a transfer and assignment thereof on an offer or terms which defendants decline to voluntarily accept.

The decree is reversed and the cause remanded with directions to enter judgment against the plaintiffs for defendants' costs and for dismissal of the action.

ASSOCIATE JUSTICES FREEBOURN and BOTTOMLY concur.

MR. JUSTICE METCALF concurs in the result.

MR. JUSTICE ANGSTMAN (dissenting):

Plaintiffs brought this action to reform a contract for the sale of real and personal property and for its cancellation.

Findings of fact, conclusions of law and judgment were entered in favor of plaintiffs and against defendants. At the outset it should be noted that we have not been furnished with a bill of exceptions containing a transcript of the evidence. The questions presented on the appeal are those which appear from the judgment roll alone. They have to do with alleged defects in the pleadings. The majority opinion reverses the trial court on

matters not presented to the trial court and not suggested in the pleadings or briefs of counsel. The majority opinion suggests that there is a difference between a voluntary and an involuntary assignment of licenses.

That is beside the point here because if defendants agreed to return the licenses to plaintiffs in case they defaulted under their contract as the court found, then their obligation to return the licenses to plaintiffs with the other property became in effect a voluntary assignment because they voluntarily assumed that obligation.

The majority opinion stresses the fact that the licenses did not belong to all the plaintiffs but only to one of them. I think this is wholly immaterial and counsel evidently so considered it because no question was raised on this score.

The rights of the plaintiffs between themselves or their right to sell liquor collectively when the licenses were issued only in the name of one of them was not involved in the case. No such issue was presented in the pleadings and counsel make no argument on this point. I think a complete answer to this contention is that if defendants acquired the licenses as a part of the purchase price of the property involved, as the court found they did, then upon default in the contract the licenses should be returned to the plaintiffs, or H. F. Green. In other words, all that defendants acquired by the contract should be returned upon their default in performing the terms of the contract. The courts should not permit defendants to hold part of the property on the supposition that plaintiffs may have been guilty of some misconduct in holding the license in the name of one plaintiff for the benefit of all. If there is any merit in the claim asserted in the majority opinion that six persons cannot sell liquor under a license issued to one person, then that question should be settled in some proceeding where that issue is tendered by the pleadings and where the parties have notice and opportunity to be heard, and even if true it adds nothing to defendants' rights.

I have given consideration to the points raised by appellants

84

in their brief to see if I could concur in the result reached by the majority but I find no merit in any of those contentions.

The first point urged is that the court erred in denying defendants' motion to separately state and number the causes of action set out in the complaint. Defendants contend that the complaint contains three causes of action which should be separately stated and numbered by reason of R. C. M. 1947, sec. 93-3203. The fallacy of this contention rests on the fact that defendants fail to recognize the difference between a cause of action and the relief or remedy sought. There is here but one cause of action though different forms of relief were asked.

After pointing out this distinction Mr. Pomeroy on Code Remedies, Fifth Edition, sec. 353, p. 541, has this to say: "Actions brought to reform instruments in writing, such as policies of insurance and other contracts, mortgages, deeds of conveyance, and the like, and to enforce the same as reformed by judgments for the recovery of the money due on the contracts, or for the foreclosure of the mortgages, or for the recovery of possession of the land conveyed by the deeds, fall within the same general principle. One cause of action only is stated in such cases, however various may be the reliefs demanded and granted."

The rule is stated similarly in 45 Am. Jur., "Reformation of Instruments," sec. 91, p. 641. And see to the same effect: Hutchinson v. Ainsworth, 73 Cal. 452, 15 Pac. 82, 2 Am. St. Rep. 823; Horton v. Winbigler, 175 Cal. 149, 165 Pac. 423; Depuy v. Selby, 76 Okl. 307, 185 Pac. 107.

The court did not err in denying defendants' motion to separately state and number the supposed causes of action.

The next point urged is that the court erred in overruling defendants' demurrer to the complaint upon the ground that there "is a defect or nonjoinder in parties defendant in this, to-wit, that it appears from said complaint that Herman G. Baehler and Alice V. Baehler are necessary and proper parties defendants in said action, and that a complete determination of the controversy cannot be had without their presence."

The complaint sets out as an exhibit the contract for the sale of the property involved which shows on its face that the purchasers were defendants Zeiters and Herman G. and Alice V. Baehler.

In the answer it is alleged that Herman G. and Alice V. Baehler after default under the contract of sale gave to plaintiffs a deed covering the property in question, a copy of which deed is attached to the answer.

"Where one has parted with all the interest he ever had in the subject matter of the controversy, so that he is no longer interested in the result, he is not a necessary party, unless relief is sought against him. * * *" 30 C. J. S., Equity, sec. 135f, page 567, and to the same effect is sec. 152, page 591.

And though the complaint on its face shows a defect of parties the objection thereto is waived where defendant answers in such a way as to show that a party necessary under the complaint is not in fact an indispensable or necessary party. 30 C. J. S., Equity, sec. 155, page 597, n. 42.

The circumstances presented here, so far as this point is concerned, call for application of R. C. M. 1947, sec. 93-3909, reading: "The court must, in every stage of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the parties, and no judgment shall be reversed or affected by reason of such error or defect."

It should be noted that the court found that the beer and liquor licenses,—the subject matter of the reformation, stand in the name of the defendants.

Since the evidence is not before us we must assume that the evidence supports this finding. The court properly overruled the demurrer on the ground of the alleged defect or non-joinder of parties.

The next point urged by defendants is that the complaint does not state facts sufficient to show mutual mistake justifying reformation. The majority opinion contains sufficient of the allegations of the complaint to show that the complaint states facts sufficient to constitute a cause of action for reformation

on the ground of mutual mistake under R. C. M. 1947, section 17-901, and within the requirements specified in Thielbar Realties, Inc., v. National Union Fire Ins. Co., 91 Mont. 525, 9 Pac. (2d) 469, and see Brubaker v. D'Orazi, 120 Mont. 22, 179 Pac. (2d) 538, which involved reformation relative to a liquor license.

If the allegations of the complaint be true, as we must assume under the circumstances of this case, then the reformation does not amount to the making of a new contract for the parties which of course the court may not do. Comerford v. United States Fidelity & Guaranty Co., 59 Mont. 243, 196 Pac. 984. It simply gives effect to what was actually agreed upon by the parties but which was inadvertently omitted from the writing.

Defendants contend that the complaint is insufficient because there is no allegation of any consideration for the agreement to reacquire the ownership and possession of the licenses upon default under the contract. This argument overlooks the fact that there is but one contract and one consideration for the entire contract. There was no separate consideration for the assignment of the licenses. Compare Parchen v. Chessman, 49 Mont. 326, 142 Pac. 631, 146 Pac. 469, Ann. Cas. 1916A, 681.

Contention is made by defendants that the licenses are personal property and with this I agree. Stallinger v. Goss, 121 Mont. 437, 193 Pac. (2d) 810. They contend that the complaint is insufficient in that it shows that at most if the contract is reformed plaintiffs have a lien upon the licenses as security for the balance due on the contract of purchase and that upon default of defendants they would be forfeited and that such an agreement is void under R. C. M. 1947, sec. 45-112, reading: "All contracts for the forfeiture of property subject to a lien, in satisfaction of the obligation secured thereby, and all contracts in restraint of the right of redemption from a lien, are void." I fail to see how this section has anything to do with the question before us.

The court found that part of the personal property which defendants were buying from plaintiffs was the liquor and beer

licenses. If the payments were met by defendants then all would be well. If they defaulted then plaintiffs were to have all the property returned to them upon their giving notice of cancellation of the contract. The complaint is not insufficient on this account.

The next contention of defendants is that the contract of purchase was cancelled before the suit was brought for reformation and that there was nothing left to reform at the time the action was commenced.

The contract provided that in case of default on the part of the purchasers the sellers at their option were given the privilege of cancelling the contract by giving thirty days' notice in writing, which notice should designate the breach complained of and if the default be in the payment of money the notice shall contain the amount necessary to cure the breach and if it is not cured in thirty days the property as well as all payments made shall be the property of the sellers.

Under the contract the purchasers were to pay $2,500 principal and accrued interest on September 15, 1947. This they failed to do. Plaintiffs on September 22d notified defendants of their default and demanded the payment of $2,500 with interest on or before thirty days after receipt of the notice.

Defendants failed to make the payments within the thirty days. The court found that after service of the notice defendants negotiated with plaintiffs to work out a proposition whereby defendants would be the sole proprietors of the business conducted at the Corral Club and represented to plaintiffs that they would be in a better position to take care of the contract payments if plaintiffs bought out the Baehlers, so that defendants could obtain all of the revenue from the operation of the business; that as a result plaintiffs did purchase the interest of the Baehlers for $900; that defendants thereupon remained in possession of the property and the licenses following the expiration of the thirty days from the date of receipt of the notice; that plaintiffs relied upon the ability of defendants to fulfill the terms of the contract after they purchased the Baehler's interest.

The court also found that on February 2, 1948, plaintiffs again served written notice on defendants of their default but specified the amount due as $17,279.79 which was many thousand dollars in excess of the amount of delinquencies; that the mistake in the amount was due to inadvertence in figuring; that defendants ignored the notice, remained in possession, continued to transact business and received the revenues therefrom.

On March 10, 1948, plaintiffs served another notice by registered mail which was received by defendants on March 18th, which specified the correct amount then due. It contained this paragraph: ''You are further notified under the provisions above quoted that this is notice likewise that no further notice of cancellation and forfeiture shall be given if the breach is not cured, but that the parties shall, following the expiration of thirty (30) days, sue to cancel said contract and forfeit the same.''

As above pointed out the court found that defendants after they received the first notice induced plaintiffs to purchase the interest of the Baehlers, and thus in legal effect to waive the benefits derived by giving the notice and defendants are estopped from contending that the contract was cancelled. It was of course at an end so far as the Baehlers were concerned but of full force and effect as to defendants.

The second notice was obviously defective and the defendants treated it as a nullity by continuing in possession and otherwise ignoring it. The fact that an ineffectual notice was given does not deprive the plaintiffs of the benefit derived from the giving of a good notice. Huffine v. Lincoln, 87 Mont. 267, 287 Pac. 629. But defendants contend that after the lapse of 30 days from the giving of the third notice the contract was cancelled and there was nothing left to reform.

The third notice as above pointed out specified that it would be followed by an action. The provision in this contract giving plaintiffs the right to terminate the contract on 30 days' notice was for the benefit of the plaintiffs which they had the right to waive. Fratt v. Daniel-Jones Co., 47 Mont. 487, 133 Pac. 700. And see, Hammond-Dodson Co. v. Slattery, 67 Mont. 489, 216

Pac. 323. Plaintiffs were not bound to pursue the remedy mentioned in the contract for its cancellation. They were privileged to pursue any remedy which the law affords in addition to that provided in the contract where as here the remedy provided in the contract was not declared to be exclusive. White v. Jewett, 106 Mont. 416, 78 Pac. (2d) 85.

Plaintiffs had the right to draw the notice in such form as to keep the contract alive for the purpose of bringing action to reform it after the failure of defendants to cure the default under it.

I have considered the other questions urged by defendants but I find no basis for disturbing the judgment.

I have considered the case, as did counsel for the parties, as if reformation of the contract was necessary in order for plaintiffs to reacquire the liquor licenses.

As a matter of law it was not necessary to reform the contract.

Since this case was tried in the district court this court in the case of State ex rel. Jester v. Paige et al., 123 Mont. 301, 213 Pac. (2d) 441, Mr. Justice Freebourn and I dissenting, held that liquor licenses are applicable only to the premises in respect to which they are issued and may not be transferred to any other premises.

Hence any other conclusion than that reached by the trial court would permit the defendants to retain liquor licenses which would be valueless to them since they are applicable only to the premises now owned by plaintiffs. The effect of the holding in the Jester case is that liquor licenses attach to the premises and pass to successive owners of the property subject to the consent of the liquor control board as to the fitness of the person to become licensee.

The conclusion reached by the trial court was right and the conclusion reached by the majority leaves a result "which not enriches" the defendants but makes plaintiffs "poor indeed" since the court found on presumptively sufficient evidence that

the premises involved are practically valueless to plaintiffs without the licenses in question.

I do not find that the court committed any error, and in consequence I think the judgment should be affirmed.

Rehearing denied June 9, 1950.